IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOHN M. HUMMASTI,                                    06-CV-1710-BR

       Plaintiff,

                                     OPINION AND ORDER

v.

ASAD ABDIRIZAK ALI; EMAL
WAHAB; RANDY BLAZAK;
K. MCGHEE, PSU Financial Aid
Director; OFFICER PAHLKE;
OFFICER MICHAELSON; OFFICER
K. GOODNER; OFFICER RAY;
OFFICER WESSON; ISLAMIC
CENTER OF PORTLAND; BILAL
MASJID; MASJID AL SABR;
MUSLIM COMMUNITY CENTER OF
PORTLAND; AL HARAMAIN ISLAMIC
FOUNDATION; and QUARAN
FOUNDATION,

       Defendants.


JOHN HUMMASTI
c/o Michelle Mischlinge
P.O. Box 1223
Portland, Or 97207
5(03) 241-3051

       Plaintiff, *Pro Se*


1 - OPINION AND ORDER

**JOHN KROGER**
Attorney General
**KATHARINE VON TER STEGGE**
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR  97301-4096
(503) 378-6313

>           Attorneys for Defendants Randy Blazak and Kenneth
>           McGhee

**AGNES SOWLE**
Multnomah County Attorney
**CARLO CALANDRIELLO**
Assistant Multnomah County Attorney
501 S.E. Hawthorne Boulevard
Suite 500
Portland, OR  97214

>           Attorneys for Defendant Emal Wahab

**LINDA MENG**
City Attorney
**JAMES G. RICE**
Assistant City Attorney
1221 S.W. Fourth Avenue
Room 430
Portland, OR 97204
(503) 823-4047

>           Attorneys for Defendants Officer Pahlke, Officer
>           Michaelson, Officer K. Goodner, Officer Ray, and
>           Officer Wesson (hereinafter referred to as Defendant
>           Officers)

**KRISTEN L. WINEMILLER**
121 S.W. Salmon St.
1420 World Trade Center
Portland, OR 97204
(503) 222-2510

>           Attorney for Defendants Islamic Center of Portland,
>           Bilal Masjid, Masjid Al Sabr, and Muslim Community
>           Center of Portland

2 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion (#88) for Summary Judgment of Defendants Randy Blazak and Ken McGhee; the Motion (#98) for Summary Judgment of Defendants Officer Caralyne Ray, Officer Deanna Wesson, Officer Troy Pahlke, Officer David Michaelson, Officer Kathryne Goodner (Defendant Officers); the Motion (#106) for Summary Judgment of Defendant Emal Wahab; the Motion (#112) for Summary Judgment of Defendants Islamic Center of Portland, Bilal Masjid, Masjid Al Sabr, and Muslim Community Center of Portland; and Plaintiff's Motion (#119) for Partial Summary Judgment.

For the reasons that follow, the Court **GRANTS** Defendants' Motions for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment.


<u>**BACKGROUND**</u>

On November 27, 2006, Plaintiff filed a Complaint in which he alleges (1) Defendants engaged in a conspiracy to close Plaintiff's business and to prevent Plaintiff from "collecting charity for the Jewish Community in Portland" in violation of 18 U.S.C. §§ 1961-68, *et seq.*; (2) Defendants Asad Abdirizak Ali, Bilal Masjid, Masjid Al Sabr, and Muslim Community Center of Portland conspired to deprive Plaintiff of the right to exercise free speech on public campuses and institutions within the United

3 - OPINION AND ORDER

States; (3) Defendant McGhee denied Plaintiff financial aid at
Portland State University (PSU) in violation of his rights under
the Equal Protection Clause of the United States Constitution;
(4) Defendant Ali "conspired to, alleged and made a false report
to Portland Police Officers so as to deprive Plaintiff of Free
Speech in violation of 42 U.S.C. §§ 1981, 1983, and 1985";
(5) Defendant Randy Blazak "conspired to deprive Plaintiff of the
right to Due Process of Law" when he "intentionally destroyed or
concealed evidence of a hate crime"; (6) Defendant Officers
violated Plaintiff's rights to "Free Speech, Religion, Equal
Protection of Law in violation of the First, Fourth, Fifth, and
Fourteenth Amendments and 42 U.S.C. 1981 and 1985"; and
(7) Defendant Officers unreasonably handcuffed Plaintiff.

On June 18, 2007, the Court entered an Order directing
Plaintiff to show cause in writing why this action should not be
dismissed as to Defendants Al Haramain Islamic Foundation, Quran
Foundation, and Asad Abdirizak Ali for failure to prosecute.

On October 4, 2007, the Court entered an Order noting
Plaintiff had not provided any substantive reason as to why he
failed to serve and to prosecute Defendants Al Haramain Islamic
Foundation, Quran Foundation, and Asad Abdirizak Ali and,
therefore, the Court dismissed Plaintiff's action against these
Defendants without prejudice.

In May and June 2008, the remaining Defendants filed Motions

for Summary Judgment[1] and Plaintiff filed his Cross-Motion for
Partial Summary Judgment.  On October 29, 2008, Plaintiff filed
an Ex Parte Submission as to Defendants Blazak and McGhee's
Motion for Summary Judgment.  Plaintiff, however, did not respond
to the Motions of the other Defendants.

## STANDARD

Federal Rule of Civil Procedure 56(c) authorizes summary
judgment if no genuine issue exists regarding any material fact
and the moving party is entitled to judgment as a matter of law.
The moving party must show the absence of an issue of material
fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th
Cir. 2005).  In response to a properly supported motion for
summary judgment, the nonmoving party must go beyond the
pleadings and show there is a genuine issue of material fact for
trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.'"
*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th
Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986)).  The court must draw all reasonable inferences in

---

[1] On May 7, 2008, the Court issued a Summary Judgment Advice
Notice to Plaintiff advising him that if he did not submit
evidence in opposition to any motion for summary judgment,
summary judgment would be entered against him if it was
appropriate.

favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.


## <u>MOTION (#106) FOR SUMMARY JUDGMENT OF DEFENDANT EMIL WAHAB</u>

Plaintiff alleges Wahab engaged in a conspiracy to close Plaintiff's business and to prevent Plaintiff from "collecting

charity for the Jewish Community in Portland" in violation of the
Racketeering Influenced and Corrupt Organizations Act (RICO), 18
U.S.C. §§ 1961-68, *et seq.*  Specifically, Plaintiff alleges in
his Complaint that Wahab

> attempted to impose . . . Islamic law (*Shaaria*) of
> *Al Jizyah* and *Dhimmitude* status on Plaintiff . . .
> to extort money and foods from Plaintiff . . . and
> to sell Plaintiff . . . a false Health Department
> License at a reduced cost so as to college to
> extort moneys [*sic*] in a design or continuing
> conspiracy, from Plaintiff in a protection racket
> within the meaning of 18 U.S.C. § 1961-68 *et seq.*

Compl. at 7.

## Background

The following facts are undisputed:

Plaintiff owned and operated a mobile food kiosk on a public
street outside the Gus Solomon Court House in Portland, Oregon
from approximately January through June 2004 without the
operating license required by Oregon Revised Statute § 624.320.
Oregon law requires all mobile food units to be approved,
licensed, and inspected by the Multnomah County Health Department
before operation.  In addition, prospective mobile food cart
owners must fill out an application and pay applicable fees to
the Multnomah County Environmental Health Section.

During the relevant period, Wahab was an Environmental
Health Specialist with the Multnomah County Health Department -
Environmental Health Section's Mobile Food Unit.  As part of
Wahab's job, he was required to inspect mobile food units to

7 - OPINION AND ORDER

ensure compliance with the State sanitary code and rules promulgated by the Oregon Department of Human Services Health Division.  According to Wahab, he was limited to inspecting food carts and kiosks and did not inspect restaurants or Halal food stores.

On May 18, 2004, Wahab approached Plaintiff's mobile food kiosk.  Wahab identified himself as a Multnomah County Health Inspector, provided Plaintiff with his business card, and learned Plaintiff was selling food without a Health Department license. Wahab informed Plaintiff that he was required to obtain a license to operate his mobile food kiosk and that the County would close and impound Plaintiff's mobile food kiosk if he did not obtain a license.

That same day, Plaintiff called the Multnomah County Health Department and confirmed Wahab was a Health Inspector. Plaintiff, however, did not attempt to obtain a license to operate his mobile food kiosk and instead chose to close his business.

## Discussion

Section 1962 of RICO contains four separate subsections that each criminalize certain types of activities.  Although Plaintiff did not identify the particular subsection of § 1962 on which he bases his claims, Plaintiff's allegations suggest he intends to assert his claims under § 1962(c), which provides:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity
> or collection of unlawful debt.

"A violation under section 1962(c) requires proof of:

'1) conduct 2) of an enterprise 3) through a pattern 4) of

racketeering activity.'"  *Howard v. Am. Online Inc.*, 208 F.3d

741, 746 (9th Cir. 2000)(quoting *Sedima S.P.R.L. v. Imrex Corp.*,

473 U.S. 479, 496 (1985)).  Wahab asserts Plaintiff has not

established the "enterprise element" or racketeering activity.

## I.  The enterprise element.

Under § 1962(c), an enterprise includes any "individual,

partnership, corporation, association, or other legal entity, and

any union or group of individuals associated in fact although not

a legal entity."  18 U.S.C. § 1961(4).  Based on the allegations

in Plaintiff's Complaint, it appears Plaintiff alleges Wahab and

other Defendants are part of an associated-in-fact enterprise,

which is "a group of persons associated together for a common

purpose of engaging in a course of conduct."  *See United States

v. Turkette*, 452 U.S. 576, 583 (1981).

To establish the existence of an associated-in-fact

enterprise, a plaintiff must produce both "evidence of an ongoing

organization, formal or informal" and "evidence that the various

associates function as a continuing unit."  *Odom v. Microsoft*

*Corp*., 486 F.3d 541, 552 (9th Cir. 2007).  In addition, a
plaintiff must establish there is an enterprise "separate and
apart from" the pattern of racketeering.  *Id*. at 549-50.

Wahab testifies in his Declaration that he does not know and
has never had any association with any of the individual
Defendants in this action.  Wahab testifies he is "familiar with
the location of Bilal Masjid" because he has attended prayer
services there "on one or two occasions."

At his deposition, Plaintiff testified as follows:

    Q:  What is your basis for belief that Mr. Wahab
        is related to [other Defendants]?

    A:  He's a health inspector, for one.  As far as
        I can ascertain, he inspects those
        businesses, Islam businesses.

    Q:  And is that something that you know or
        something that you believe to be the case?

    A:  It's something that is based on information I
        belief, I believe.

    Q:  Okay.  And why do you believe that Mr. Wahab
        is related to the Portland State group?

    A:  Because of students from Portland State
        coming to the kiosk and harassing me.  It was
        before he showed up that three Muslims from
        the halal stores and Portland State showed up
        at the kiosk.

    Q:  And why do you believe that Mr. Wahab is
        related or conspiring with Mr. Ali?

    A:  Well, because I made a contract offer to John
        Warrenton with the Department of Homeland
        Security to monitor funding of terrorists,
        . . . I [was] solicited at the halal stores
        to provide charity to Palestinians and other

> Muslims and for reasons which I won't
> disclose at this time.

Pl.'s Dep. at 190-91.  At best, Plaintiff has alleged because
Wahab inspected "Islamic businesses" and, according to Plaintiff,
Halal food stores in his capacity as a health inspector and
because Plaintiff once encountered Defendant Ali at a Halal food
store, Ali and Wahab have some association with each other.

Wahab's supervisor, Lila Wickham, testifies in her
Declarations that Wahab inspected only mobile food carts and did
not inspect Halal food stores or markets.  In addition,
Plaintiff's belief that Wahab inspected Halal stores or knew Ali
or any of the other Defendants is unsupported by any evidence
and, therefore, is mere speculation.  Even in the light most
favorable to Plaintiff, the Court concludes there is not any
evidence from which rational jurors could find Wahab and other
Defendants were part of an associated-in-fact enterprise.

**II.  Pattern of racketeering activity.**

As noted, violation of § 1962(c) requires evidence of a
pattern of racketeering activity.  RICO defines a pattern of
racketeering activity as follows:  A "pattern of racketeering
activity requires at least two acts of racketeering activity, one
of which occurred after the effective date of this chapter and
the last of which occurred within ten years . . . after the
commission of a prior act of racketeering activity."  18 U.S.C.
§ 1961(5).  RICO defines acts of racketeering in pertinent part

11 - OPINION AND ORDER

as follows:

> any act or threat involving murder, kidnapping,
> gambling, arson, robbery, bribery, extortion,
> dealing in obscene matter, or dealing in a
> controlled substance or listed chemical. . .,
> which is chargeable under State law and punishable
> by imprisonment for more than one year.

18 U.S.C. § 1961(1).

In his Complaint, Plaintiff alleges Wahab attempted to extort money and food from Plaintiff as part of a continuing conspiracy and "protection racket."  As noted, however, Plaintiff has not made out any jury question as to whether Defendant Wahab met or had any association with other Defendants in this matter or that any Defendant planned to extort money or food from Plaintiff.

To the extent Plaintiff intended to bring a claim against Wahab for extortion individually, the record reflects Wahab, in the course of his duties as an Environmental Health Specialist, merely informed Plaintiff that he was required to obtain a license to operate his mobile food cart as required by Oregon Revised Statute § 624.320.  In fact, Plaintiff testified in his deposition as follows:

> Q:   And when he said I'm going to close down your
>      business, did he give a reason for doing
>      that?
>
> A:   He said that I was not visibly displaying a
>      health department license.
>
> Q:   Did you have such a license?

12 - OPINION AND ORDER

A:    No.

                         * * *

Q:    And did he ask for or did you show him your
      food handler's cards?

A:    Yes.

Q:    Did you show those to him?

A:    Yes.

Q:    And what he wanted was a different
      certificate; is that right?

A:    He wanted to see a license.

Q:    And did you do anything towards getting a
      license or did you just close the business
      down?

A:    I just closed the business.

                         * * *

A:    [Wahab] walked up [to my food kiosk] and he
      requested to know why I was selling food
      there without a health department license
      displayed.  And I said, "Well who are you?"

           And he said, "I'm Emal Wahab from the
      Multnomah County Health Department."  And he
      pulled a business card out of his wallet
      . . . .  He stated, he demanded that I close
      the business immediately.  He stated if I did
      not come to his office and pay him in his
      office for a license that he was going to
      have it closed and he was going to - If I
      didn't agree to do that, he was going to have
      it closed and impounded immediately.

Pl.'s Dep. at 54-55, 184, 186.  Plaintiff alleges in his

Complaint that Wahab's insistence that Plaintiff obtain a license

to operate his food kiosk was actually an attempt by Wahab to

13 - OPINION AND ORDER

impose *Al Jizyah*, which Plaintiff explained as follows:

> Islamic law requires that non-Muslims pay *al-jizyah* as protection primarily so that the Islamic community will not persecute Jews or non-Muslims, Christians, whatever.  And they, those non-Muslims are given a status of – I refer to it in the complaint as *Dhimmitude*.

Pl.'s Dep. at 192.  Plaintiff's allegation, however, is based on mere speculation.  The record reflects only that Wahab required Plaintiff to obtain a license to operate his food kiosk as required under § 624.320.  Plaintiff, in fact, testified Wahab did not state Plaintiff needed to obtain a license for the purpose of *Al Jizyah* or for any purpose other than compliance with Oregon law.  Even in the light most favorable to Plaintiff, the Court concludes there is not any evidence from which rational jurors could find Wahab attempted to extort money or food from Plaintiff either alone or in concert with other Defendants.

Accordingly, the Court grants Defendant Wahab's Motion for Summary Judgment.

## MOTION (#112) FOR SUMMARY JUDGMENT OF DEFENDANTS ISLAMIC CENTER OF PORTLAND, BILAL MASJID, MASJID AL SABR, AND MUSLIM COMMUNITY CENTER OF PORTLAND

Plaintiff alleges Defendants Islamic Center of Portland, Bilal Masjid, Masjid Al Sabr, and Muslim Community Center of Portland conspired to deprive Plaintiff of the right to exercise free speech on public campuses and institutions within the United States.  Although it is not clear, Plaintiff also appears to

14 - OPINION AND ORDER

allege these Defendants engaged in a conspiracy to close
Plaintiff's business and to prevent Plaintiff from collecting
charity for the Jewish community in Portland in violation of 18
U.S.C. §§ 1961-68, *et seq.*

Islamic Center of Portland and Bilal Masjid move for summary
judgment on the ground that Plaintiff did not effect service on
them.  Masjid Al Sabr and Muslim Community Center of Portland
move for summary judgment on the ground that Plaintiff has not
stated a claim against them.

## Discussion

## I.    Plaintiff did not effect service on Islamic Center of Portland or Bilal Masjid.

On January 25, 2007, Summonses were issued to Islamic Center
of Portland and Bilal Masjid.  On February 9, 2007, Return of
Service Unexecuted as to the Islamic Center of Portland was
filed.  On February 23, 2007, Return of Service Unexecuted as to
Bilal Masjid was filed.

As the Court advised Plaintiff in its May 8, 2007, Order,
Federal Rule of Civil Procedure 4(m) requires the summons and
complaint must be served on a defendant within 120 days after the
filing of the complaint.  Plaintiff did not serve a Summons and
Complaint on Islamic Center of Portland and Bilal Masjid within
120 days of November 27, 2006, which is the day that Plaintiff
filed his Complaint.

Accordingly, the Court dismisses Plaintiff's claims as to

15 - OPINION AND ORDER

Defendants Islamic Center of Portland and Bilal Masjid.

**II.  Merits of Plaintiff's claims against Masjid Al Sabr and Muslim Community Center of Portland.**

In his Complaint, Plaintiff alleges Masjid Al Sabr and the Muslim Community Center of Portland conspired to deprive Plaintiff of the right to exercise free speech on public campuses and institutions within the United States, specifically "in connection with publishing a paper on Islam at USP FL in 1995." Plaintiff also appears to assert these Defendants engaged in a conspiracy to close Plaintiff's business and to prevent Plaintiff from "collecting charity for the Jewish Community in Portland" in violation of 18 U.S.C. §§ 1961-68, *et seq.*

Plaintiff did not provide any evidence to support his allegation regarding the alleged deprivation of his right to exercise free speech.  Moreover, Plaintiff does not allege when, where, or how these Defendants deprived Plaintiff of his right to exercise free speech in connection with the paper referenced in his Complaint nor did Plaintiff provide any evidence at summary judgment to support this claim.

As to Plaintiff's apparent allegation that Masjid Al Sabr and Muslim Community Center of Portland engaged in a conspiracy to close Plaintiff's business and to prevent Plaintiff from collecting charity for the Jewish community in Portland, Plaintiff also has not provided any substantive evidence to support this allegation.  In fact, defense counsel asked

16 - OPINION AND ORDER

Plaintiff at his deposition to identify any information he had to support his claims against Masjid Al Sabr and Muslim Community Center of Portland.   Plaintiff responded as follows:

> A:   There was going to be a bombing at Masjid Al Sabr.  And I was an informant to the Homeland Security.

> Q:   If I understood what you just said correctly, one of the named defendants was going to be a victim of a criminal act?

> A:   Yes, a terrorist act.

> Q:   And was that act something that would have been perpetrated by another defendant that you have named in this lawsuit?

> A:   No.  I have not named that individual in the lawsuit.

> Q:   And you, yourself, would not have been the intended target of this bombing attempt?

> A:   No.

> Q:   All right.  I believe then that that is outside the scope of this complaint . . . unless I'm missing a connection that you haven't yet drawn?

> A:   We'll get to that.

> Q:   We're here now.  This might be a good time to do it because you're confusing me.

> A:   Well, the individual that located the food kiosk, Wesley Graham, was the individual that was going to bomb the mosque.

> Q:   And he is a friend of yours - was a friend of yours?

> A:   He was an individual that I might consider a friend, more of an associate.

17 - OPINION AND ORDER

         \* \* \*

   Q: And you have been - at least with respect to
      that incident - serving in the capacity of an
      informant with Homeland Security?

   A: Yes.

         \* \* \*

   Q: Okay. . . .  As I understood your answer,
      that is a connection to one of the local
      mosques that is not set out in the complaint,
      but that's really the only . . . direct
      connection that you can think of to . . . one
      of the mosques?

   A: Yes.

Hummasti Dep. at 152-55.  Plaintiff also testified he had
"interaction . . . with the Islamic community from the halal
stores" that he shopped at weekly from January through June 2004.

  Even viewing the facts in the light most favorable to
Plaintiff, the Court concludes there is not any evidence that
Masjid Al Sabr and Muslim Community Center of Portland engaged in
a conspiracy to close Plaintiff's business or to prevent
Plaintiff from collecting charity for the Jewish community in
Portland.

  Accordingly, the Court grants the Motion for Summary
Judgment of Defendants Masjid Al Sabr and Muslim Community Center
of Portland.

### MOTION (#98) FOR SUMMARY JUDGMENT OF DEFENDANTS RAY, WESSON, PAHLKE, MICHAELSON, AND GOODNER (DEFENDANT OFFICERS)

In his Complaint, Plaintiff asserts Defendant Officers violated Plaintiff's rights to "Free Speech, Religion, Equal Protection of Law in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. 1981 and 1985" and unreasonably handcuffed Plaintiff.

Plaintiff appears to assert in his Complaint that Defendant Officers participated in a conspiracy to deny Plaintiff financial aid at PSU, to close Plaintiff's business, to prevent Plaintiff from collecting charity for the Jewish community in Portland, and to deprive Plaintiff of due process in connection with Defendant Blazak's alleged destruction of evidence in violation of RICO. In his deposition, however, Plaintiff clarified he does not intend to allege Defendant Officers participated in any alleged RICO conspiracies. The Court, therefore, addresses only Plaintiff's claims that Defendant Officers violated Plaintiff's rights to "Free Speech, Religion, Equal Protection of Law in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. 1981 and 1985" and unreasonably handcuffed Plaintiff.

### Background

On August 12, 2005, Defendant Officers responded to a complaint of harassment at the intersection of S.W. Broadway

19 - OPINION AND ORDER

Avenue and S.W. Yamhill Avenue in Portland, Oregon.  Ali, the
complaining witness, told Defendant Officers that he was stopped
at a red light in his car when he saw Plaintiff holding cardboard
signs that read "Remove Terrorists from Gaza not Jews" and "Only
one Islam Wake Up Jihad = War Dinallaiy Bi Siyf."  Ali told
Defendant Officers that Plaintiff approached his car and asked
him whether he was Muslim.  Ali replied he was Muslim.  Ali
informed Defendant Officers that Plaintiff then stepped into the
street, reached into Ali's car, and grabbed Ali's shirt, at which
point Ali ran the red light and drove away.  Ali stated Plaintiff
kicked his car and left a black mark as Ali was driving away.
Ali believed the altercation happened because Ali is black and a
Muslim.

     Officer Michaelson inspected Ali's car and observed a black
mark located on the left rear wheelwell that was consistent with
someone kicking the car.  Officer Michaelson took photos of the
car.

     Officer Goodner spoke with Plaintiff, who told her that
nothing had happened.  Then Plaintiff told Officer Goodner that
Ali drove up to the intersection and spit on Plaintiff from his
car, Plaintiff and Ali exchanged expletives, and Ali drove away.
Officer Goodner did not see any signs of spit on Plaintiff.  When
she asked Plaintiff where Ali had spit on him, Plaintiff was
unable to give her a "straight answer."

20 - OPINION AND ORDER

Based on their investigation, Defendant Officers charged
Plaintiff with Intimidation II, Criminal Mischief, and
Harassment.  Officer Pahlke read Plaintiff his *Miranda* rights,
took Plaintiff into custody, and transported him to the Multnomah
County Detention Center for booking.

At some point, the Multnomah County District Attorney
charged Plaintiff with Intimidation II, Criminal Mischief, and
Harassment.  On December 18, 2006, the District Attorney
dismissed the charges because the "State [was] unable to
proceed."  Aff. of James G. Rice, Ex. 1.

## I.    Plaintiff's claim under 42 U.S.C. § 1985(3).

Although Plaintiff does not specify the subsection of
§ 1985 under which he brings this claim, it appears from the text
of his Complaint that he intends to bring a claim against
Defendant Officers for conspiracy under § 1985(3).

> To bring a cause of action successfully under
> § 1985(3), a plaintiff must allege and prove four
> elements:  (1) a conspiracy; (2) for the purpose
> of depriving, either directly or indirectly, any
> person or class of persons of the equal protection
> of the laws, or of equal privileges and immunities
> under the laws; and (3) an act in furtherance of
> this conspiracy; (4) whereby a person is either
> injured in his person or property or deprived of
> any right or privilege of a citizen of the United
> States.  *United Brotherhood of Carpenters and
> Joiners of America v. Scott,* 463 U.S. 825, 828-29
> (1983).

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

Under § 1985(3), a plaintiff must establish an "agreement or

meeting of the minds [by the defendants] to violate [the plaintiff's] constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)(citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)).  A plaintiff must allege conspiracy under § 1985(3) with factual specificity.  *Johnson v. State of Cal.*, 207 F.3d 650, 655 (9th Cir. 2000), *overruled on other grounds by Johnson v. Cal.*, 543 U.S. 499 (2005)(citing *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988)).  In addition, a claim under § 1985(3) must be premised on racial or class-based animus that demonstrates an invidious discriminatory motivation.  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).

Plaintiff does not allege facts in his Complaint that establish Defendant Officers conspired to deprive him of equal protection of the laws.  Plaintiff merely makes general allegations that Defendant Officers violated § 1985 "on account of Plaintiff's race, religion and political affiliation."  In his deposition, Plaintiff testified he believed Defendant Officers conspired against him because they conferred about Plaintiff within earshot and stated, "Well, he's a convicted felon.  Let's arrest him."  Plaintiff also testified at deposition that he believed some individuals in the Portland Police Bureau were racist and corrupt, but Plaintiff did not state he believed

Defendant Officers were among the allegedly racist or corrupt individuals to which he referred.

Even assuming Defendant Officers made the alleged statements and the alleged statements qualify as forming a conspiracy, those facts are insufficient to establish such a conspiracy was based on a racial or class-based animus within the meaning of § 1985(3). *See Oluwa v. Sec'y of State*, No. CIV S-05-1596 GEB DAD P, 2006 WL 3147682, at *4 (E.D. Cal. Nov. 1, 2006)(the plaintiff failed to state an equal-protection claim because "[f]elons . . . are not members of a protected class.")(citing *Franklin v. Murphy*, 745 F.2d 1221, 1231 (9th Cir. 1984), and *Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999)).

Accordingly, the Court grants Defendant Officers' Motion for Summary Judgment as to Plaintiff's § 1985(3) claim.

## II.  Plaintiff's claim under 42 U.S.C. § 1981.

As noted, Plaintiff alleges in his Complaint that Defendant Officers violated Plaintiff's rights to "Free Speech, Religion, Equal Protection of Law in violation of . . . 42 U.S.C. 1981 . . . solely on account of Plaintiff's race, religion and political affiliation."

Section 1981 provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed

by white citizens.

Section 1981 prohibits discrimination in the making and enforcement of contracts by reason of race. *See St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987)("[T]he term 'make and enforce contracts' includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.").

Plaintiff has not made any allegations or produced any evidence that Defendant Officers impaired his ability to make, to enforce, or to enjoy the benefit of any contract or that they did so on the basis of Plaintiff's race.   In fact, Plaintiff testified in his deposition that he specifically did not intend to allege Defendant Officers participated in an alleged conspiracy to close Plaintiff's business.

Accordingly, the Court grants Defendant Officers' Motion for Summary Judgment as to Plaintiff's § 1981 claim.

**III. Plaintiff's claims under § 1983.**

In his Complaint, Plaintiff alleges Defendant Officers violated Plaintiff's rights to "Free Speech, Religion, [and] Equal Protection of Law."   Although it is not clear, it appears Plaintiff may be asserting Defendant Officers violated these rights pursuant to 42 U.S.C. § 1983.

Section 1983 provides in pertinent part:

24 - OPINION AND ORDER

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity,
> or other proper proceeding for redress . . . .

To establish a claim under § 1983, a plaintiff must initially allege "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right." *L.W. v. Grubbs (Grubbs I)*, 974 F.2d 119, 120 (9th Cir. 1992).

**A.  Plaintiff's claim for violation of his rights under the First Amendment of the United States Constitution.**

Although it is not clear from his Complaint, it appears Plaintiff alleges Defendant Officers violated his right to free speech under the First Amendment to the United States Constitution because they interfered with his display of political signs when they arrested him.

"To establish a First Amendment . . . claim . . ., a plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 768 (9th Cir.

25 - OPINION AND ORDER

2006)(citing *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d
1283, 1301 (9th Cir. 1999)).  "If the plaintiff establishes the
elements of a [First Amendment] claim, the government can escape
liability by showing that it would have taken the same action
even in the absence of the protected conduct."  *Id.* (quotation
omitted).

       Defendant Officers do not dispute Plaintiff's display
of political signs on a city sidewalk is a constitutionally
protected activity under the First Amendment.  Defendant
Officers, however, contend Plaintiff has not established their
actions in investigating Ali's complaint or in arresting
Plaintiff would "chill a person of ordinary firmness from
continuing to engage in the protected activity" or that
Plaintiff's protected activity was a substantial or motivating
factor in Defendant Officers' conduct.

              In the First Amendment context, a plaintiff
              creates a genuine issue of material fact on the
              question of retaliatory motive when he or she
              produces, in addition to evidence that the
              defendant knew of the protected speech, at least
              (1) evidence of proximity in time between the
              protected speech and the allegedly retaliatory
              decision, (2) evidence that the defendant
              expressed opposition to the speech or (3) evidence
              that the defendant's proffered reason for the
              adverse action was false or pretextual.  Such
              evidence may be direct or circumstantial.

*Id.* at 771 n.21 (citation omitted).

       Although Plaintiff testified at deposition that he
believed Defendant Officers decided to arrest him because he is a

26 - OPINION AND ORDER

convicted felon, Plaintiff has not offered any evidence from which rational jurors could find Defendant Officers investigated Ali's complaint or arrested him because he was displaying political signs.  Thus, Plaintiff has not produced any evidence, direct or circumstantial, that Defendant Officers expressed opposition to Plaintiff's speech or that the reasons they proffered for arresting Plaintiff were false or pretextual. Plaintiff, therefore, has not made out a genuine issue of material fact as to whether his protected activity was a substantial or motivating factor in Defendant Officers' investigation or arrest of Plaintiff.

Accordingly, the Court grants Defendant Officers' Motion for Summary Judgment as to Plaintiff's claim for violation of his rights under the First Amendment to the United States Constitution.

**B.    Plaintiff's claims for unlawful detention and arrest under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.**

Plaintiff alleges in his Complaint that Defendant Officers "unlawfully restrained, detained and arrested Plaintiff under the color of law in violation of the Fifth and Fourteenth Amendments solely because of Defendants' animus toward Plaintiff, a convicted felon."

**1.    Analysis of Plaintiff's claims under the Fourth Amendment.**

"Fifth Amendment due process rights are intended

27 - OPINION AND ORDER

as a limitation on Congress.  The due process rights of the Fifth Amendment were made applicable to the states through the Fourteenth Amendment.  Thus it is generally understood that the due process clause of the Fifth Amendment applies to the actions of the federal government." *Picray v. City of Coburg*, No. Civ. 04-6172-TC, 2006 WL 1143081, at *3 (D. Or. Apr. 24, 2006)(citing *Dusenbery v. United States*, 534 U.S. 161 (2002)).  "In any event, the rights set forth in the Fifth Amendment substantially duplicate those set forth in the Fourteenth Amendment." *Id*. Plaintiff's Fifth Amendment due-process claim, therefore, is properly addressed as part of Plaintiff's Fourteenth Amendment claim.  *Id*.  Plaintiff's claim for a substantive due-process violation arising out of an allegedly unreasonable seizure pursuant to the Fourteenth Amendment, however, is properly analyzed as a claim for violation of his rights under the Fourth Amendment rather than as a claim for violation of Plaintiff's substantive due-process rights under the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 274 (1994)(When "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process, must be the guide for analyzing these claims.'").  *See also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004)(pursuant to *Albright*, the plaintiff's claim

28 - OPINION AND ORDER

that he was unreasonably detained and arrested should be construed as a claim under the Fourth Amendment).  Thus, the Court analyzes Plaintiff's claims for unlawful detention and arrest under the Fourth, Fifth, and Fourteenth Amendments as claims for violation of Plaintiff's Fourth Amendment rights.

> **2.    Defendant Officers had reasonable suspicion to detain Plaintiff.**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. Const. amend. IV, § 1.  In *Morgan v. Woessner*, the Ninth Circuit explained:

> Stops under the Fourth Amendment fall into three categories.  First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave.  Such brief, "consensual" exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures.  Second, the police may "seize" citizens for brief, investigatory stops.  This class of stops is not consensual, and such stops must be supported by "reasonable suspicion."  Finally, police stops may be full-scale arrests.  These stops, of course, are seizures, and must be supported by probable cause.

997 F.2d 1244, 1252 (9th Cir. 1993)(citations omitted).

"The Fourth Amendment . . . protections extend to brief investigatory stops of persons . . . that fall short of

29 - OPINION AND ORDER

traditional arrest." *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005)(quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Nevertheless, "[s]uch investigatory stops are justified by reasonable suspicion that criminal activity may be afoot." *Arvizu*, 534 U.S. at 273. "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Dorais*, 241 F.3d 1124, 1130 (9th Cir. 2001)(quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)). Reasonable suspicion requires only "a minimal level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). A court must consider the totality of the circumstances when determining whether reasonable suspicion existed. *United States v. Osborn,* 203 F.3d 1176, 1181 (9th Cir. 2000). "The Fourth Amendment permits limited investigatory stops where there is some reasonable, articulable, and objective manifestation that the person seized is, or is about to be, engaged in criminal activities." *United States v. Smith*, 217 F.3d 746, 749 (9th Cir. 2000). To determine whether reasonable suspicion existed to justify a brief investigatory stop as described in *Terry*, "the court must consider the facts available to the officer at the moment of seizure." *Id.* (citing *Terry*, 392 U.S. at 21-22).

30 - OPINION AND ORDER

Here it is undisputed that Defendant Officers received a complaint from Ali that Plaintiff verbally and physically harassed Ali and kicked his car as he drove off. The Ninth Circuit has held similar facts constitute reasonable suspicion for purposes of a *Terry* stop. *See, e.g.,* United States v. White, Nos. 08-10109, 08-10115, 2008 WL 4962960, at *1 (9th Cir. Nov. 21, 2008)(the officers' stop and investigation of Defendant was supported by reasonable suspicion even though there was "a possible innocent explanation for" the defendant's conduct because the officers "reasonably responded to a tip that a man was holding a rifle at 2 a.m. in the parking lot of a nightclub.").

On this record, the Court concludes as a matter of law that the totality of the circumstances establish Defendant Officers' had reasonable suspicion to detain Plaintiff and to investigate Ali's complaint of harassment.

### 3. Defendant Officers had probable cause to arrest Plaintiff.

Police may arrest a person without a warrant if the arrest is supported by probable cause. *United States v. Cruikshank*, Nos. 08-50101, 08-50103, 2009 WL 301836, at *1 (9th Cir. Feb. 6, 2009). "Probable cause exists when 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime.'" *Id*.

31 – OPINION AND ORDER

(quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.
2007)).  "Probable cause may be premised on 'the collective
knowledge of all the officers involved in the criminal
investigation.'"  *Id.* (quoting *United States v. Ramirez*, 473 F.3d
1026, 1032 (9th Cir. 2007)).

        Defendant Officers investigated Ali's complaint
and noted a scuff mark on Ali's car consistent with his
allegations.  In addition, Defendant Officers did not see signs
of spit on Plaintiff even though he reported same.  When Officer
Goodner asked Plaintiff where Ali had spit on him, Plaintiff was
unable to give her a "straight answer."  Based on their
investigation, Defendant Officers charged Plaintiff with several
offenses under Oregon law, including Intimidation in the Second
Degree, which is defined in pertinent part as follows:

> (1) A person commits the crime of intimidation in
> the second degree if the person:
>
> > (a) Tampers or interferes with property,
> > having no right to do so nor reasonable
> > ground to believe that the person has such
> > right, with the intent to cause substantial
> > inconvenience to another because of the
> > person's perception of the other's race,
> > color, religion, sexual orientation or
> > national origin;
> >
> > (b) Intentionally subjects another to
> > offensive physical contact because of the
> > person's perception of the other's race,
> > color, religion, sexual orientation or
> > national origin. . . .

Or. Rev. Stat. § 166.155(1)(a) and (b); Criminal Mischief in the

Third Degree, which is defined as follows:

> A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that the person has such right, the person tampers or interferes with property of another.

Or. Rev. Stat. § 164.345(1); and Harassment, which at the time of Plaintiff's arrest was defined in pertinent part as follows:

> (1) A person commits the crime of harassment if the person intentionally:
>
> > (a) Harasses or annoys another person by:
> >
> > > (A) Subjecting such other person to offensive physical contact; or
> > >
> > > (B) Publicly insulting such other person by abusive words or gestures in a manner intended and likely to provoke a violent response.

Or. Rev. Stat. § 166.065(1).

Based on the totality of the circumstances in this case, the Court concludes as a matter of law that "a prudent person would have concluded that there was a fair probability that [Plaintiff] had committed a crime."  Accordingly, the Court concludes Defendant Officers had reasonable suspicion and probable cause to detain and to arrest Plaintiff.

**C.  Plaintiff's claim for excessive force.**

In his Complaint, Plaintiff alleges Defendant Officers "caused Plaintiff unnecessary pain and suffering" because they handcuffed Plaintiff even though he has "a congenital deformity

33 - OPINION AND ORDER

of the elbows."  The Court analyzes Plaintiff's claim as one for
excessive force in violation of the Fourth Amendment.

> All claims of excessive force . . . are analyzed
> under the objective reasonableness standard of the
> Fourth Amendment as enunciated in *Graham* and
> *Garner*.  "Determining whether the force used to
> effect a particular seizure is reasonable under
> the Fourth Amendment requires a careful balancing
> of the nature and quality of the intrusion on the
> individual's Fourth Amendment interests against
> the countervailing governmental interests at
> stake."  This balancing test entails consideration
> of the totality of the facts and circumstances in
> the particular case, including "the severity of
> the crime at issue, whether the suspect poses an
> immediate threat to the safety of the officers or
> others, and whether he is actively resisting
> arrest or attempting to evade arrest by flight."

*Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir.
2005)(citation omitted).  Cases alleging use of excessive force
in violation of the Fourth Amendment "nearly always require[ ] a
jury to sift through disputed factual contentions, and to draw
inferences therefrom," and, therefore "summary judgment or
judgment as a matter of law in excessive force cases should be
granted sparingly."  *Lolli v. County of Orange*, 351 F.3d 410,
415-16 (9th Cir. 2003)(citing *Santos v. Gates*, 287 F.3d 846, 853
(9th Cir. 2002)).

        To establish a genuine issue of material fact exists on
an essential element of a claim, the nonmoving party must
introduce some "significant probative evidence to support the
complaint."  *Anderson*, 477 U.S. at 249.  As noted, Plaintiff did
not respond to Defendant Officers' Motion for Summary Judgment.

34 - OPINION AND ORDER

Although Plaintiff alleges in his Complaint that he suffers from a congenital deformity of the elbows, Plaintiff has not produced any evidence to support his allegation that Defendant Officers knew about Plaintiff's alleged deformity or to show that Plaintiff informed the Defendant Officers that he had such a deformity.  Finally, Plaintiff has not provided any evidence that he suffered an actual injury from his handcuffing.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)(affirmed summary judgment dismissal of excessive-force claim because the plaintiff did not submit any medical records showing she had suffered an actual injury as a result of being handcuffed)(citing *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990)(allegations of injury without medical records or other evidence of injury insufficient to establish excessive force)), and *Rodriguez v. Farrell*, 280 F.3d 1341, 1351-53 (11th Cir. 2002)(describing nonexcessive handcuffing technique as that which "ordinarily would be painful but cause minimal injury.")).  *See also West v. Eskes*, No. C07-617RSL, 2008 WL 4283056, at *11 (W.D. Wash. Sept. 17, 2008) (same).  Thus, Plaintiff has failed to provide any "significant probative evidence" to support his excessive-force claim based on painful handcuffing.

        Accordingly, the Court grants Defendant Officers' Motion for Summary Judgment as to Plaintiff's excessive-force

claim.

For these reasons, the Court grants Defendant Officers'
Motion for Summary Judgment in its entirety.

### MOTION (#88) FOR SUMMARY JUDGMENT OF
### DEFENDANTS BLAZAK AND McGHEE

In his Complaint, Plaintiff alleges Defendant Randy Blazak
violated RICO when he

> [i]n concert and participation with . . .
> Defendants . . . on or about 23 February 2006 and
> continuing through November 2006 . . . conspired
> to deprive Plaintiff of the right to Due Process
> of Law for, or on account of Plaintiff's political
> beliefs, speech and religious ideology . . ., and
> because Plaintiff is a member of the Jewish
> Community Blazak has obstructed, hindered or
> impeded the administration of justice in <u>State v.
> Hummasti</u>, 05-11-54687 . . . and in <u>Hummasti v.
> Portland State University, et al.</u>, 3:05-CV0-1142-
> MO.  Relevant thereto, Defendant Blazak
> intentionally destroyed or concealed evidence of a
> hate crime in a scheme to obstruct justice and
> deprive Plaintiff of Civil Rights and Equal
> Protection of the Law in ongoing investigations
> relevant to international terrorism as related to
> PSU's Muslim Student Body.

Compl. at  11-12.  Plaintiff also alleges Defendant Ken McGhee
violated RICO when he

> [i]n concert and participation with . . .
> Defendants . . . on or about 28 September 2005 and
> continuing through November 2006 . . . denied
> Plaintiff academic financial aid standing . . . in
> violation of Equal Protection of the Law; so as to
> aid in preventing Plaintiff from acquiring a
> degree in International (Middle East) Studies and
> preventing the establishment of a Region UN Human
> Rights Court in East Jerusalem under direction of
> pro-Islamic PSU Faculty, *wahabi* agents of the

36 - OPINION AND ORDER

> Saudi Arabian government, to advance or promote
> the Islamic religion in violation of the First
> Amendment Free Exercise and Establishment of
> Religion Clauses.

Compl. at 9-10.

## Background

Plaintiff was enrolled as a student at PSU for the 2002-2003, 2003-2004, and 2004-2005 academic years.  McGhee Aff. at ¶¶ 4-9.  PSU granted Plaintiff financial aid to complete 36 credits for the 2002-2003 academic year, but Plaintiff earned only 16 credits.  Accordingly, PSU suspended Plaintiff's financial aid for poor academic performance, but reinstated it after Plaintiff appealed the suspension.  *Id*. at ¶¶ 4-5.

PSU again suspended Plaintiff's financial aid in 2004 on the basis of his poor academic performance.  *Id*. at ¶ 7.  PSU reinstated Plaintiff's financial aid in Fall 2004 because of a school-wide "amnesty" program that allowed students whose financial aid had been suspended to have their aid reinstated.  *Id*. at ¶ 8.

On June 28, 2005, PSU's Office of Admissions, Records & Financial Aid, sent Plaintiff an Academic Progress Report to inform Plaintiff that he was in "Financial Aid Warning Status."  PSU advised Plaintiff that students who receive financial aid must pass at least 67% of the minimum credits requested to receive the aid.  PSU informed Plaintiff that he had passing grades in 12 credits, which was less than 67% of the 36 credits

37 - OPINION AND ORDER

required for him to receive the financial aid disbursed to him for the 2004-2005 academic year.  PSU also informed Plaintiff that he would be in "suspended eligibility" status and would not be eligible for financial aid if his percentage of passing credits was still below 67% at the end of Summer 2005.  PSU advised Plaintiff that he could petition to receive financial aid based on "extenuating circumstances."  If his petition was denied, however, he "must complete at least 6 credits without receiving federal or state financial aid. . . .  After you have passed the six credits without aid from PSU, you must submit a Satisfactory Academic Progress Petition."  Aff. of Katharine von Ter Stegge, Ex. E.

On July 7, 2005, Plaintiff filed an action against PSU in the United States District Court for the District of Oregon (*Hummasti v. Portland State University,* 05-CV0-1142-MO) in which he alleged, among other things, that PSU violated Plaintiff's right to due process when it denied him financial aid in 2005.

On July 10, 2005, Plaintiff filed a petition with PSU alleging extenuating circumstances prevented him from completing his required classes.  Plaintiff also took two classes for a total of six credits at PSU during Summer 2005 and received passing grades.  *See* Pl.'s Ex Parte Submission re: Academic Standing and Fraudulent Submission of PSU Professor Dan Johnson, Ex. 5.

38 – OPINION AND ORDER

On October 3, 2005, PSU's Satisfactory Academic Progress Committee denied Plaintiff's petition based on his repeated failure to earn the credits required to retain financial aid and denied Plaintiff's request for financial aid for the 2005-2006 academic year.

On October 7, 2005, Plaintiff signed a settlement agreement in *Hummasti v. Portland State University* in which Plaintiff released PSU, its "former agents, representatives, and employees" and agreed in pertinent part

> not to commence, at any time, any action of any kind in any court or other judicial or admini-strative body of the United States or State to recover any kind of damages or consideration from the State whether in the form of money damages or injunctive relief, based on any facts associated with the documents filed in . . . Case No. 05-1142MO.

Aff. of von Ter Stegge, Ex. B at 3.

At some point in late 2005 or early 2006, Plaintiff contacted Blazak.  Although Blazak is a professor of sociology and criminology at PSU, Plaintiff contacted Blazak in his capacity as the Director of the Coalition Against Hate Crimes, a private organization not funded by or associated with PSU. Plaintiff informed Blazak that he was the victim of a hate crime on August 12, 2005, but he, nevertheless, had been criminally charged in Multnomah County in *State v. Hummasti*, Case No. 05-11-54687, as a result of the events of August 12, 2005.  Blazak instructed Plaintiff to contact the police for help.

39 - OPINION AND ORDER

On February 22, 2006, Plaintiff contacted Blazak by email and reported he had requested police records from his arrest in August 2005, but he was told he would have to pay $10 for the police report. Plaintiff informed Blazak that he was indigent and "a target of all Muslim terrorists as [he] oppose[s] Hamas and all Muslims" and requested Blazak help him to obtain $10 for his police report. Blazak responded he was concerned about Plaintiff's statement that he opposes Hamas and all Muslims and stated, "I'm not sure if, as the chair of the Coalition Against Hate Crimes, I should be aiding anyone who 'opposes all Muslims.' Good luck on obtaining the report." Plaintiff did not have further contact with Blazak.

In his Affidavit, Blazak testifies he was not a witness to the August 12, 2005, incident; he does not know and has never known the names of any individuals who may have witnessed the August 12, 2005, incident; he has never had any knowledge of any exculpatory or inculpatory evidence relevant to the case of *State v. Hummasti*, 05-11-54687; he does not have any knowledge about the case of *Hummasti v. Portland State University*; and he never obstructed, hindered, or impeded justice in either the case of *State v. Hummasti* or *Hummasti v. Portland State University* or destroyed or concealed evidence related to either action. Finally, Blazak testifies he does not know Defendant McGhee. Similarly, McGhee testifies in his Affidavit that he does not

know Blazak.

## Discussion

Blazak and McGhee move for summary judgment as to all of Plaintiff's claims against them.  Plaintiff cross-moves for summary judgment as to his claims against Blazak and McGhee.

**I.  Plaintiff's claims under RICO.**

Plaintiff alleges Blazak and McGhee conspired with other Defendants to deny Plaintiff financial aid and to destroy evidence in violation of RICO.  Although Plaintiff does not identify the particular subsection of § 1962 on which he bases his claims, Plaintiff's allegations suggest he intends to assert his claims under § 1962(c).  As noted, "[a] violation under section 1962(c) requires proof of: '1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity.'" *Howard*, 208 F.3d at 746 (quoting *Sedima S.P.R.L.*, 473 U.S. at 496).  An enterprise under § 1962(c) includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  In Plaintiff's Complaint, it appears he alleges Blazak, McGhee, and other Defendants are part of an associated-in-fact enterprise, which is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *See Turkette*, 452 U.S. at 583.

To establish the existence of an associated-in-fact

enterprise, a plaintiff must produce both "evidence of an ongoing organization, formal or informal" and "evidence that the various associates function as a continuing unit." *Odom*, 486 F.3d at 552.  In addition, a plaintiff must establish there is an enterprise "separate and apart from" the pattern of racketeering. *Id*. at 549-50.

Here Plaintiff has not offered evidence sufficient to make out a jury question as to whether Blazak, McGhee, and other Defendants are part of an ongoing organization or that they function as a continuing unit.  Although both Blazak and McGhee work for PSU, Plaintiff has not shown other Defendants have any connection with PSU.  In addition, Plaintiff has not produced any evidence to establish Blazak and McGhee "function as a continuing unit."  Both Blazak and McGhee testified in their Affidavits that they do not know each other and that they have never associated with each other.

At his deposition, Plaintiff testified as follows:

Q:   Do you have any information to suggest that Mr. McGhee or Mr. Professor Blazak [*sic*] knew each other?

A:   Not that I know of.

Q:   And do you have any evidence that Professor Blazak or Mr. McGhee knew any of the other named defendants in your lawsuit?

A:   Blazak, as I understand it, knows Ali.  He monitors hate crimes in the State of Oregon.

Q:   And did has [*sic*] . . . Professor Blazak ever

told you that he knows him?

A:    No.

                                        * * *

Q:    And who told you that [Blazak knows Ali]?

A:    He monitors hate crimes.  He received a phone
      call from the eyewitness to the incident on
      August 12 or whatever it was 2005.

Q:    Okay.  So other than that, you have no
      indication if any of the other folks that are
      listed as defendants know Professor Blazak or
      Mr. McGhee; is that correct?

A:    As far as I know.

                                        * * *

Q:    Do you have any knowledge of Mr. McGhee
      communicating with any of the other
      defendants named in your complaint?

A:    Not directly, no.

Q:    And well, what indirect contacts do you think
      he had?

A:    Through the president's office and through
      the Middle east Studies Center.

Q:    Is that based on personal knowledge?

A:    That's based on personal knowledge.

Q:    And how do you know this?

A:    I'm not going to disclose that at this time.

Pl.'s Dep. at 194-95, 214-15.  Plaintiff refused to answer

defense counsel's question.  The Court ultimately directed

Plaintiff to answer, but he again refused to answer and the Court

directed defense counsel to move on.  *Id.* at 218-20.

43 - OPINION AND ORDER

Plaintiff has not submitted any further evidence to support his allegation that Blazak, McGhee, and other Defendants knew each other or "associated together for a common purpose of engaging in a course of conduct."  Thus, Plaintiff's allegations are based on mere speculation.  The Court, therefore, concludes Plaintiff has not made out any genuine issue of material fact as to whether Blazak, McGhee, and other Defendants in this matter were part of an associated-in-fact enterprise.

Accordingly, the Court grants the Motion for Summary Judgment of Blazak and McGhee as to Plaintiff's claims for RICO violations and denies Plaintiff's Cross-Motion for Summary Judgment on this claim.

## II.  Plaintiff's claim against Defendant Blazak under § 1983.

It appears Plaintiff also intended to bring a claim against Blazak for violation of Plaintiff's due-process rights under 42 U.S.C. § 1983 apart from his conspiracy claim.  As noted, Plaintiff alleges Blazak violated Plaintiff's right to due process because he "obstructed, hindered or impeded the administration of justice in State v. Hummasti, 05-11-54687 . . . and in Hummasti v. Portland State University, et al., 3:05-CV0-1142-MO [and] . . . intentionally destroyed or concealed evidence of a hate crime."  Compl. at 11-12.

Again, to establish a claim under § 1983, a plaintiff must initially allege "(1) the conduct complained of was committed by

44 - OPINION AND ORDER

a person acting under color of state law; and

(2) the conduct deprived the plaintiff of a constitutional

right." *Grubbs I*, 974 F.2d at 120.  There is no rigid formula

for determining when an individual is acting under color of state

law.  *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006)

(citing *Ousts v. Md. Natal Ins. Co.*, 505 F.2d 547, 550 (9th Cir.

1974)).  Generally, "[s]tate employment is . . . sufficient to

render the defendant a state actor." *Id*. (quotation omitted).

Nevertheless, "whether [a state employee] is acting under color

of state law turns on the nature and circumstances of the

[employee's] conduct and the relationship of that conduct to the

performance of his official duties." *Id* (citation omitted).

    "'The traditional definition of acting under color of state

law requires that the defendant in a § 1983 action have exercised

power possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state

law.'" *McDade v. West*, 223 F.3d 1135, 1139-40 (9th Cir. 2000)

(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  "'Thus,

generally, a public employee acts under color of state law while

acting in his official capacity or while exercising his

responsibilities pursuant to state law.'" *Id*. (quoting *West*, 487

U.S. at 49-50).  "The acts, therefore, must be performed while

the [state official] is acting, purporting, or pretending to act

in the performance of his or her official duties." *Id*. at 1140

45 - OPINION AND ORDER

(citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th

Cir. 1996)).

Although Blazak is an employee of PSU and, therefore, a

state employee, Blazak's duties as a professor include teaching

classes, turning in grades, and keeping current on academic

developments in his field.  Blazak's duties do not include

accessing or maintaining evidence relevant to litigation or

assisting individuals in obtaining police reports.  In addition,

when Plaintiff contacted Blazak to request assistance in

obtaining a police report and possibly dealing with the events of

August 12, 2005, Plaintiff contacted Blazak in his capacity as

Director of the Coalition Against Hate Crimes, a private

organization not funded by or associated with PSU.

On this record, the Court concludes Plaintiff has not made

out any genuine issue of material fact as to whether Blazak was

acting under color of state law within the meaning of § 1983.

Accordingly, the Court grants the Motion for Summary Judgment as

to Plaintiff's § 1983 claim against Blazak and denies Plaintiff's

Cross-Motion for Summary Judgment on this claim.

**III. Plaintiff's claim against Defendant McGhee under § 1983.**

It also appears Plaintiff intended to bring a claim against

McGhee for violation of Plaintiff's Equal Protection and First

Amendment rights under 42 U.S.C. § 1983 apart from his conspiracy

claim.  As noted, Plaintiff alleges McGhee

46 - OPINION AND ORDER

denied Plaintiff academic financial aid standing
. . . in violation of Equal Protection of the Law;
so as to aid in preventing Plaintiff from
acquiring a degree in International (Middle East)
Studies and preventing the establishment of a
Region UN Human Rights Court in East Jerusalem
under direction of pro-Islamic PSU Faculty, *wahabi*
agents of the Saudi Arabian government, to advance
or promote the Islamic religion in violation of
the First Amendment Free Exercise and
Establishment of Religion Clauses.

**A.    Plaintiff's claim against McGhee is barred by the terms of the settlement in *Hummasti v. PSU*.**

Settlement agreements are interpreted according to the

principles of state contract law. *See, e.g., Navarro v. Mukasey*,

518 F.3d 729, 733 (9th Cir. 2008)("Our interpretation of the

settlement agreement is governed by principles of California

contract law."). Under Oregon law, the principles of contract

interpretation are as follows:

[The Court's] objective is to ascertain the
intention of the parties "based on the terms and
conditions of the [contract]." *Id*. at 469, 836
P.2d 703. [The Court] begin[s] with the wording
of the [contract], applying any definitions that
are supplied by the [contract] itself and
otherwise presuming that words have their plain,
ordinary meanings. *Id*. at 469-70, 836 P.2d 703.
If, from that vantage point, [the Court] find[s]
only one plausible interpretation of the disputed
terms, [the Court's] analysis goes no further.
*Id*. If [the Court] find[s] that the disputed
terms are susceptible to more than one plausible
interpretation, however, [the Court] examine[s]
those terms in the broader context of the policy
as a whole. *Hoffman*, 313 Or. at 470, 836 P.2d
703. If [the Court's] consideration of the
policy's broader context fails to resolve the
ambiguity, then [the Court] will construe the
policy against the drafter. . . . *Id*. at 470-71,
836 P.2d 703. In all events, interpretation of [a

> contract] is a question of law that is confined to
> the four corners of the [contract] without regard
> to extrinsic evidence. *Andres v. American Standard
> Ins. Co.*, 205 Or. App. 419, 424, 134 P.3d 1061
> (2006).

*Tualatin Valley Housing Partners v. Truck Ins. Exch.*, 208 Or.

App. 155, 159-60 (2006)(quoting *Hoffman Constr. Co. v. Fred S.*

*James & Co.*, 313 Or. 464, 469-70 (1992)).

As noted, on October 7, 2005, Plaintiff entered into a

settlement in *Hummasti v. PSU* in which he

> release[d] and discharge[d] . . . Portland State
> University, its employees, agents, assigns . . .
> from any known or unknown or unforseen actions,
> claims, liabilities, injury, losses, and damages
> without limitation, including, but not limited to,
> any which are in any way connected or associated
> with or based upon the facts alleges in documents
> filed in the United States District Court for the
> District of Oregon Case No. 05-1142MO.
>
> * * *
>
> expressly waive[d] and relinquish[ed] any and all
> rights under any laws or statutes of the State of
> Oregon and the United States, for any and all
> civil claims and obligations, known and unknown,
> at law or in equity, which the Plaintiff or [*sic*]
> may have or claim to have, arising at any time in
> the unlimited past, up to and including the date
> Plaintiff executes this document.

Aff. of von Ter Stegge, Ex. B at 1.  Plaintiff also agreed

> not to commence, at any time, any action of any
> kind in any court or other judicial or
> administrative body of the United States or State
> to recover any kind of damages or consideration
> from the State whether in the form of money
> damages or injunctive relief, based on any facts
> associated with the documents filed in . . . Case
> No. 05-1142MO.

48 - OPINION AND ORDER

Aff. of von Ter Stegge, Ex. B at 3.

The language of the settlement agreement is clear.
Plaintiff agreed to release and to discharge PSU as well as its
employees from any claims, including claims that were "in any way
connected or associated with or based upon the facts alleges in
documents filed in the United States District Court for the
District of Oregon Case No. 05-1142MO."

In his Complaint in *Hummasti v. Portland State
University*, Plaintiff alleged, among other things, that PSU and
others violated his rights to due process, to equal protection,
and under the First Amendment when they placed him in "academic
suspend status" and suspended his financial aid in June 2005.
Here Plaintiff again seeks to challenge the suspension of his
financial aid, including the denial of Plaintiff's petition to
reinstate financial aid by PSU's Satisfactory Academic Progress
Committee on October 3, 2005.  On October 7, 2005, four days
after he was aware of the Committee's decision, Plaintiff signed
the settlement agreement releasing PSU and its employee from all
civil claims that Plaintiff had or "may have . . . arising at any
time . . . up to and including the date Plaintiff executes" the
settlement agreement.

Based on this record, the Court concludes Plaintiff
released and discharged his right to bring these claims against
McGhee and any other employee of PSU in the October 7, 2005,

49 - OPINION AND ORDER

settlement agreement.  Accordingly, the Court concludes Plaintiff is precluded by the settlement agreement from bringing his claim against McGhee and, therefore, the Court grants the Motion for Summary Judgment as to Plaintiff's § 1983 claim against McGhee.

In summary, the Court grants the Motion for Summary Judgment of Blazak and McGhee as to Plaintiff's § 1983 claims based on violation of his rights to due process, to equal protection, and under the First Amendment allegedly arising from the suspension of his financial aid and denies Plaintiff's Cross-Motion for Partial Summary Judgment on these claims.

**CONCLUSION**

For these reasons, the Court **GRANTS** the Motion (#88) for Summary Judgment of Defendants Randy Blazak and Ken McGhee; **GRANTS** the Motion (#98) for Summary Judgment of Officer Defendants Ray, Wesson, Pahlke, Michaelson, and Goodner; **GRANTS** the Motion (#106) for Summary Judgment of Defendant Emal Wahab; and **GRANTS** the Motion (#112) for Summary Judgment of Defendants Islamic Center of Portland, Bilal Masjid, Masjid Al Sabr, and Muslim Community Center of Portland.  The Court **DENIES**

Plaintiff's Motion (#119) for Partial Summary Judgment.

IT IS SO ORDERED.

DATED this 20th day of March, 2009

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge